SHERMAN et al., Appellees,

v.

FIFTH THIRD BANK et al., Appellants.

[Cite as *Sherman v. Fifth Third Bank* (1992), 93 Ohio App.3d 57.]

Court of Appeals of Ohio,
Montgomery County.

Nos. 13123, 13141.

Decided Feb. 24, 1992.

58

*David C. Greer,* for appellees.

*John B. Pinney,* for appellant Fifth Third Bank.

*L. Clifford Craig,* for appellant Helen Margaret Hook Clarke.

WILSON, Judge.

On February 19, 1991, the plaintiffs-appellees, Charles F. Sherman and William P. Sherman, filed a complaint in the general division of the common pleas court seeking temporary and permanent orders enjoining the defendant-appellant Fifth Third Bank from using its right of cumulative voting to elect F. David Clarke III to the board of directors of the Standard Register Company ("Standard Register").

The history and most of the operative facts of this case have been stipulated.

Standard Register was founded in 1912. John Q. Sherman served as its C.E.O. until his death in 1939. William C. Sherman succeeded his brother as C.E.O.

The plaintiffs and six of the additional defendants named by the bank are the children of John Q. Sherman.

Defendant-appellant Helen Margaret Hook Clarke was also named by the bank as an additional defendant. She is the sole surviving child of the deceased sister of John Q. and William C. Sherman.

The bank is the trustee of an *inter vivos* trust created by William C. Sherman and is the trustee of the William C. Sherman testamentary trust.

Mrs. Clarke is the sole income beneficiary of the testamentary trust, and she is the income beneficiary of one half of the income of the *inter vivos* trust. The children of John Q. Sherman ("the Shermans") are the income beneficiaries of the other one half of the income of the *inter vivos* trust.

The *inter vivos* trust contains shares of the Standard Register having 16.66 percent of the total outstanding voting power of Standard Register. The testamentary trust contains stock equivalent to 16.82 percent of the voting power. Thus, the bank votes approximately one third of Standard Register's total shares. It follows that by cumulative voting the bank would be able to elect one third of the board members.

On January 12, 1981, the Shermans filed complaints in the probate and general divisions of the common pleas court seeking an order enjoining the bank from using its cumulative voting power to re-elect Mrs. Clarke's husband, F. David Clark III, to the board of Standard Register at its meeting scheduled for April 3, 1981. The bank made Mrs. Clarke a party to this action.

On January 30, 1981, Standard Register filed a complaint against the bank and Mr. and Mrs. F. David Clark III in federal court.

On March 25, 1981, the parties to the three law suits signed an "Outline of Agreement" during the third day of trial in the common pleas court.

The agreement provided for the resignation of F. David Clark III from the board. The "Outline of Agreement" also provided in Paragraph No. 5 as follows:

"Beginning with the annual election of directors of the Standard Register Company in 1982 and each year thereafter so long as the William C. Sherman trusts have a substantial interest in the Standard Register Company and Mrs. Clarke or her successors in interest are beneficiaries of such trusts, *the parties* to the state court actions referred to in Paragraph 7 of this Outline of Agreement *shall take reasonable steps, including, if necessary, the exercise of cumulative voting by the Fifth Third Bank, to [e]nsure that each year there will be a number of independent businessmen as directors of the Standard Register Company satisfactory to the Fifth Third Bank and equivalent to the number which the Fifth Third Bank could elect by cumulative voting* and that at least one of those individuals will be satisfactory to Mrs. Clarke or a majority of the beneficiaries succeeding to her interest. In selecting such directors, the Fifth Third Bank shall consult with the management of the Standard Register Company and

consider its views, but the Fifth Third Bank shall not be bound by the views of management."

After the execution of the March 25, 1981 "Outline of Agreement," the parties entered into negotiations to draft a final settlement agreement against a deadline of Standard Register's board meeting scheduled for April 3, 1981.

These negotiations focused on the meaning of the words "independent businessmen" or "independent business persons."

Early in the negotiations the parties appear to have tentatively agreed that the words "independent business persons" would be interpreted so as to exclude members of the Clarke family.

During subsequent negotiations on April 1 and April 2, 1981, the Clarkes' counsel advised the Shermans' counsel that the Clarkes would not agree to any settlement that resulted in the permanent exclusion of all Clarke family members from the definition of "independent business persons."

There being an impasse on this issue, the parties stipulated that "it was decided to use the term 'independent business persons' without further elaboration." The term was used in the Settlement Agreement which was signed by the parties on April 3, 1981.

Paragraph No. 4 of the "Settlement Agreement" provides as follows:

"Beginning with the annual election of directors of Standard Register in 1982 and each year thereafter, so long as the William C. Sherman Trusts have a substantial interest in Standard Register and Mrs. Clarke or her successors in interest are beneficiaries of such Trusts, *the Shermans and Clarkes and Fifth Third* or its successor, as Trustee of the William C. Sherman Trusts (hereinafter in this paragraph referred to as 'the Trustee'), *shall take all reasonable steps, including, if necessary, the exercise of cumulative voting by the Trustee, to [e]nsure that each year there will be a number of independent business persons elected as directors of Standard Register* satisfactory to the Trustee in its fiduciary capacity as Trustee for all beneficiaries of the William C. Sherman Trusts, it being understood that the Trustee is not obligated to accede to the views of the Shermans or the Clarkes, or any of them, in determining which directors should be elected. At a minimum, the number of such independent persons shall be equivalent to the number of directors which the Trustee could elect by cumulative voting, and at least one of those individuals must be satisfactory to Mrs. Clarke or a majority of the beneficiaries succeeding to her interests. In selecting such directors, the Trustee shall consult with the management of Standard Register and consider their views, but the Trustee shall not be bound by the views of management in selecting such directors."

On October 17, 1991, the trial court filed a decision and order finding that F. David Clarke III is not an "independent business person." The court permanently enjoined the bank "from exercising its voting power to elect persons to the Standard Register Board of Directors who are not independent of Fifth Third, the Shermans, [or] the Clarkes."

 The bank and Mrs. Clarke have appealed from the order granting the injunction. The first assignment of error of both appellants will be discussed together. Mrs. Clarke's first assignment of error states:

"The trial court erred to the prejudice of defendant-appellant by elevating its mistaken view of the 'intent and spirit' of a prior settlement agreement over the actual language of the agreement."

The bank's assignment of error provides:

"The trial court erred in entering a permanent injunction which forever enjoins the trustee from exercising its voting power to elect persons to the Standard Register Board of Directors who are not independent of Fifth Third, the Shermans, the Clarkes, or any successors as trustee or trust beneficiaries."

We agree with the implicit finding of the trial court that the words "independent business persons" as used in the Settlement Agreement are ambiguous and subject to differing interpretations.

There was evidence before the court that the words only mean independent of corporate management. However, there was conflicting evidence before the trial court on this issue.

We think that the decision of the trial court on this issue is supported by the evidence.

The trial court also found that the bank's "voting for other than 'independent business persons' would violate the intent and spirit of the Settlement Agreement."

 The trial court rejected the appellants' argument that the settlement agreement does not limit the bank to voting only for "independent business persons" where that minimum would otherwise be satisfied.

The agreement requires all parties "to take all reasonable steps * * * to [e]nsure that * * * there will be a number of independent business persons elected."

The "number" is not specified. However, we believe that it is reasonable to conclude that the "number" is the number of persons that could be elected by the cumulative voting of one third of the shares of Standard Register which would depend upon the total number of Standard Register board members.

We agree with the appellants that the bank is restricted to voting for "independent business persons" only "if necessary" to ensure that one third of the board members are "independent business persons."

We also believe that the language contained in the "Outline of Agreement" supports this interpretation.

The appellants' first assignments of error are sustained.

 Early in the trial proceedings the appellants' motions to dismiss for lack of jurisdiction were overruled. The overruling of the motions forms the basis of the appellants' second assignments of error. The appellants rely on R.C. 2101.24(A)(1)(d) which provides in part:

"Except as otherwise provided by law, the probate court has exclusive jurisdiction:

" * * * *

"To appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts[.]"

The appellants contend that the prayer of the plaintiffs' complaint was for an order to direct and control the conduct of a testamentary trustee. We disagree for the reasons given by the trial court.

The second assignments of error are overruled.

The appellants' counterclaims for declaratory relief are still pending before the trial court.

We reverse and remand for further proceedings on the assumption that the appellants will pursue the claims for declaratory relief.

*Judgment reversed*
*and cause remanded.*

FAIN, P.J., and WOLFF, J., concur.